# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TIM JAMES BECK,**
                **Plaintiff,**

        **v.**                                                **Case No. 19-C-1228**

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration**
                **Defendant.**

## DECISION AND ORDER

Plaintiff Tim James Beck applied for social security disability benefits, claiming he could no longer work due to back and shoulder impairments. The Administrative Law Judge ("ALJ") assigned to the case agreed that these impairments were severe but found that they did not qualify as conclusively disabling under agency regulations and that plaintiff retained the ability to perform a range of sedentary work.

Plaintiff now seeks judicial review of the ALJ's decision. Plaintiff's arguments are for the most part undeveloped and fail to address the ALJ's actual findings. Finding no reversible error, I affirm the decision and dismiss this action.

## I. LEGAL STANDARDS

### A.    Disability Evaluation

Agency regulations prescribe a five-step, sequential test for determining disability. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity" ("SGA"), i.e., "work activity that involves significant physical or mental activities," 20 C.F.R. § 404.1572(a), done "for pay or profit." Id. § 404.1572(b); but see

20 C.F.R. § 404.1574(a)(3) ("If you are working in a sheltered workshop, you may or may not be earning the amounts you are being paid.").

If the claimant is not engaging in SGA, the ALJ determines at step two whether he suffers from any "severe" impairments. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. Id. § 404.1520(c).

If the claimant has a severe impairment or impairments, step three requires the ALJ to determine whether any of those impairments, alone or in combination, qualify as conclusively disabling under the agency's "Listings." Id. § 404.1520(d). To meet or equal a Listing, "the claimant must satisfy all of the criteria of the listed impairment." Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999).

If the impairments are severe but do not meet or equal a Listing, the ALJ decides at step four whether the claimant can, given his "residual functional capacity" ("RFC"), perform his past relevant work. 20 C.F.R. § 404.1520(e) & (f). RFC is an assessment of the claimant's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, i.e., eight hours a day, for five days a week, or an equivalent work schedule. SSR 96-8p, 1996 SSR LEXIS 5, at *1.

If the claimant cannot perform past work, at step five the ALJ considers whether the claimant can, given his age, education, work experience, and RFC, perform other jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005). "The Commissioner typically uses a vocational expert ('VE') to assess whether there are a significant number of jobs in the national economy that the claimant can do." Liskowitz v. Astrue, 559 F.3d 736, 743

2

(7th Cir. 2009).

**B.    Judicial Review**

The court will uphold an ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the conclusion.  Jeske v. Saul, 955 F.3d 583, 587 (7th Cir. 2020).  "Substantial evidence is not a demanding requirement."  Martin v. Saul, 950 F.3d 369, 373 (7th Cir. 2020).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal quote marks omitted).  The court will not, under this deferential standard, replace the ALJ's judgment with its own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility.  Jeske, 955 F.3d at 587.  Where substantial evidence supports the ALJ's determination, the court must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled.  Burmester v. Berryhill, 920 F.3d 507, 510 (7th Cir. 2019).

While the ALJ must in rendering his decision build a bridge from the evidence to his conclusion, he need not provide a complete written evaluation of every piece of testimony and evidence, Shideler v. Astrue, 688 F.3d 306, 310 (7th Cir. 2012), and need only minimally articulate his justification for rejecting evidence of a disability, Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004).  The court examines the ALJ's opinion as a whole to determine whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his conclusions.  Curvin v. Colvin, 778 F.3d 645, 650 (7th Cir. 2015); see also Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000) ("In analyzing an ALJ's opinion for such fatal gaps or contradictions, we give the opinion a commonsensical reading rather than

3

nitpicking at it.") (internal quote marks omitted).

## II. FACTS AND BACKGROUND

**A.    Summary of Medical Evidence**

Plaintiff injured his back on March 19, 2015, trying to open and lift a manhole cover. (Tr. at 250.) After conservative management failed to alleviate his back and radiating leg pain, doctors ordered an MRI (Tr. at 252), which revealed a disc herniation at the L5-S1 level (Tr. at 255), and on December 3, 2015, plaintiff underwent a lumbar laminectomy and discectomy (Tr. at 263, 269). During follow-up visits, plaintiff reported complete relief of leg pain but continued low back pain. (Tr. at 275, 277.) On exam, he displayed reduced lumbar range of motion but full motor strength, normal reflexes, and negative straight leg raise test. (Tr. at 276.)

Plaintiff also complained of left shoulder pain related to the March 19, 2015, incident (Tr. at 297, 325, 360), receiving treatment including injections for those symptoms (Tr. at 279, 298, 330, 442), eventually undergoing rotator cuff repair surgery on March 10, 2016 (Tr. at 275, 402-04.) He also received physical therapy, noting improved range of motion. (Tr. at 378-95.)

On June 30, 2017, plaintiff went to the emergency room complaining of back pain. The doctor concluded that this pain was not due to worsening of plaintiff's lumbar disc disease but rather a strain to the back in that area. The doctor prescribed Norco, Skelaxin, and Naproxen, further recommending plaintiff apply heat to the low back. (Tr. at 844.) The doctor also offered plaintiff the next seven days off from work. (Tr. at 845.)

A July 7, 2017, MRI revealed a recurrent disc extrusion at L5-S1 and degenerative changes at L4-5. (Tr. at 868-69.) Plaintiff saw Andrew Greene, D.O., at the Neuroscience Group, regarding the disc herniation, and it appears he was at that time continued on

4

medications.  (Tr. at 871-72.)

On July 8, 2017, plaintiff returned to the ER regarding lumbar radiculopathy, and the doctor prescribed Percocet and a course of steroids, referring him to Tomasz Michalski, M.D., for follow up care.  (Tr. at 857-58.)  On July 14, plaintiff saw Dr. Michalski, who prescribed medications including cyclobenzaprine, prednisone, pregabalin (Lyrica), and Tramadol; referred plaintiff for physical therapy; and ordered a lumbar epidural.  The doctor indicated: "Watch lifting, stretching, twisting to protect the back." (Tr. at 860.)  On July 25, Dr. Michalski increased Lyrica to twice daily and recommended plaintiff try "standing more often while at work to help with back pain" and complete physical therapy.  (Tr. at 864.)  Plaintiff was scheduled for ten therapy sessions in August 2017.  (Tr. at 873.)  On August 21, Dr. Michalski prescribed a five day course of prednisone and excused plaintiff from work for three days (Tr. at 865): 8/21, 8/22, and 8/23 (Tr. at 866).

On August 25, 2017, plaintiff went to the urgent care clinic, complaining of a neck strain. The doctor recommended ibuprofen, ice, and heat, and again indicated he should follow up with Dr. Michalski.  (Tr. at 851.)

On August 30, 2017, Dr. Michalski continued plaintiff on Tramadol, ibuprofen, and Lyrica, and recommended a lumbar epidural and MRI of the neck.  (Tr. at 848.)  Dr. Michalski also filled out a form, checking a box indicating: "Timothy is totally incapacitated at this time. Patient will be re-evaluated on [9/12/17]." (Tr. at 849.)  Dr. Michalski left blank the portions of the form listing exertional categories and specific limitations in sitting, standing, and postural movements.  (Tr. at 849.)  Dr. Michalski also filled out an excuse indicating that plaintiff should be excused from work from 8/30/17-9/12/17.  (Tr. at 850.)

In November 2017, plaintiff underwent repeat back surgery.  (See Tr. at 891-94, 39,

5

249.) The record does not contain subsequent treatment records.

**B.    Procedural History**

### 1.    Application for Benefits

Plaintiff applied for benefits in January 2016, alleging that he became disabled as of April 19, 2015, at age 36, due to back and left shoulder problems. (Tr. at 166, 188.) In a function report, plaintiff indicated that he was in pain all day. He reported that he could sit about 15 minutes, stand for ten minutes, and walk for ten minutes; the rest of the day he had to lay down. (Tr. at 218.) He wrote that he needed help dressing and bathing (Tr. at 219), and his girlfriend and mother did the cooking, household chores, and shopping (Tr. at 220-21). He spent most of the day watching TV. (Tr. at 222.) He indicated that he could lift about five pounds (Tr. at 223), and that he walked with a cane because his left leg would sometimes give out (Tr. at 224). He took Norco and ibuprofen for pain. (Tr. at 225.) In a physical activities addendum, plaintiff wrote that he could continuously sit for 15 minutes, stand for ten minutes, and walk for ten minutes; in a day, he could sit for two hours and stand/walk zero hours. (Tr. at 226.)

### 2.    Agency Review

On April 18, 2016, the agency sent plaintiff for an orthopedic consultative examination with Vicente Bernabe, D.O. Plaintiff indicated that he experienced left shoulder and lower back pain, which he related to the March 19, 2015, work-related injury. He underwent a lumbar laminectomy in December 2015 and recently had surgery on the left shoulder. His left arm was still in a sling at that time, and he was not allowed to use it. He was to begin physical therapy in a few weeks. (Tr. at 831.)

On exam, plaintiff appeared to be in no acute distress.  He moved freely in and out of the office and around the exam room without the use of any assistive device.  His gait was normal, he was able to toe and heel walk, and he exhibited normal swing and stance phases. Exam of the cervical spine revealed normal attitude and posture of the head, with no significant tenderness to palpation, no visible or palpable spasm, and full, painless range of motion.  (Tr. at 832.)  Exam of the thoracic spine was also unrevealing; palpation elicited no tenderness. Inspection of the lumbar spine revealed tenderness and reduced range of motion, but straight leg raise testing was negative supine and seated.  Right shoulder exam was normal.  Left shoulder exam showed plaintiff was still in an abduction sling; he was not allowed to move the left upper extremity; range of motion thus could not be determined.  Exams of the right elbow, wrist, and hand were normal.  (Tr. at 833.)  Exams of the lower extremities were also unrevealing.  Motor strength was normal in the right upper extremity and the lower extremities; sensation was well preserved.  (Tr. at 834.)

Dr. Bernabe concluded that plaintiff could lift and carry ten pounds occasionally and five pounds frequently; push and pull on the right without restrictions (no pushing/pulling on the left); walk and stand six hours out of an eight hour day; sit six hours out of an eight hour day; perform no manipulative activities on the left (no restrictions on the right); and able to bend, crouch, stoop, and crawl occasionally.  (Tr. at 835.)

The agency denied the application initially on May 4, 2016 (Tr. at 76, 91), based on the review of R. Weeks, M.D., who concluded that plaintiff could perform light work with occasional climbing and postural movements and occasional reaching with the left arm (Tr. at 71-72). Plaintiff requested reconsideration (Tr. at 95), and the agency sent plaintiff for another consultative exam, which was completed by Karen Butler, M.D., on November 28, 2016.

7

Plaintiff told Dr. Butler that he could do his activities of daily living, but he had to struggle to do them. He came to the exam with a cane. He indicated that he took Norco and ibuprofen for pain. (Tr. at 841.)

On exam, plaintiff appeared in no distress. Dr. Butler believed "that there is some malingering going on and that he does not give his best effort." (Tr. at 842.) There was no atrophy to the back. He used a cane to walk but did not give his best effort. He could climb and go down stairs but seemed to do this with great effort. Straight leg raise test was normal. He refused to do toe and heel walk, and refused to squat and stand. His shoulders were symmetrical, with no atrophy to the left shoulder. Grasp was also symmetrical and normal. On range of motion testing, he refused to give much effort, but Dr. Butler noticed no weakness or atrophy in the left shoulder. (Tr. at 842.)

On review of the medical records, Dr. Butler noted that the surgeon who did the back surgery cleared plaintiff and essentially gave a normal exam, which Dr. Butler agreed with. "I can really find no deficit on this patient. It appears he has healed well from his surgery. [He] also appears to express more pain and more restriction of movement than . . . is noted on his examination." (Tr. at 842.)

Finally, Dr. Butler indicated that she observed plaintiff leave the office, walking very deliberately, but once he got outside he took his cane and threw it in the back seat, swiveled himself around to the back, and got into his car with no distress or problem. (Tr. at 842.) Dr. Butler concluded:

> It is clear that this patient had some kind of injury to the back [which was] repaired and also to the left shoulder partial rotator cuff tear, which was also repaired. He is able to do his ADLs by his own admission and on examination I really find no deficit to this patient other than he is deconditioned and does not really work hard to try to help himself.

8

(Tr. at 843.)

The agency denied reconsideration on December 19, 2016 (Tr. at 77, 96), based on the review of Pat Chan, M.D., who concluded that plaintiff could perform medium work with frequent use of the left arm for reaching (Tr. at 86-87). Plaintiff then requested a hearing before an ALJ. (Tr. at 102.)

**3.     Hearing**

On May 15, 2018, plaintiff appeared with counsel for his hearing. The ALJ also arranged for testimony from a VE. (Tr. at 30.)

**a.     Plaintiff**

Plaintiff testified that he was then 39 years old, with a high school education, two years of college, and a certificate in water supply technology. He lived with his parents, girlfriend, and four children, ages 18, 13, 11, and six. (Tr. at 35.) He had a driver's license but indicated that driving caused pain in his left leg so he did not drive much. (Tr. at 35-36.)

Plaintiff testified that in 2017 he worked for Sunshine Health, a sheltered work facility, for about six months doing computer work, taking clients out on different outings, and organizing files. (Tr. at 36-37.) Plaintiff testified that the employer tried to make accommodations for him, but he could not physically handle the job, missed time, and constantly took pain pills. He left the job in August and underwent a second back surgery in November 2017. (Tr. at 36-37, 45-46.) Plaintiff identified previous employment as a warehouse worker (late 1990s to 2003), furniture salesman (2004 to 2006), and installing and repairing water mains/lines (2006 to 2015). (Tr. at 37-38.) He also did security work at a hotel in 2012 and 2013. (Tr. at 56.)

9

Asked why he felt he was no longer able to work, plaintiff testified that he still experienced pain in his lower back and burning/numbness in the left leg. He indicated that the November surgery lessened the pain in the left leg, but he still experienced numbness. He stated that if the back and leg pain were gone he would be able to work. (Tr. at 39.) He testified that he took various medications, including ibuprofen 800 and Lyrica, and Tramdol and Norco if the pain got really bad. (Tr. at 39-40.) He took Lyrica daily, Tramadol usually every other day, and Norco a couple times a week. He indicated that the medication took his pain down from a seven or eight level to a four or five. (Tr. at 40.) He described side effects of ringing in the right ear and forgetfulness. (Tr. at 41.) The Norco also made him sleepy. (Tr. at 48-49.)

Asked about his daily activities, plaintiff indicated that he watched television, went to doctors' appointment, and tried to interact with his kids. (Tr. at 42, 50.) He spent most of his time at home lying down to relieve pain. (Tr. at 50.) He indicated that his girlfriend and mother did the household chores. (Tr. at 43, 50.) He tried to do some walking for exercise, but indicated that he had gained quite a bit of weight since his back injury. (Tr. at 43-44.) He usually wore easy off and on clothes and slip-on shoes. (Tr. at 49-50.)

Plaintiff testified that he could sit for about 30 minutes, stand for five to ten minutes, and walk the length of three to four houses. (Tr. at 48.) He noted three surgeries, two on his back and one on his shoulder. (Tr. at 51.) The first back surgery was in December 2015, the second in November 2017. (Tr. at 51-52.) He indicated that he also had physical therapy, which did not help much. (Tr. at 52.)

### b. VE

The VE classified plaintiff's past work as furniture store sales person, light generally,

very heavy as performed; construction worker, heavy generally, very heavy as performed; warehouse worker, medium generally, heavy as performed (Tr. at 55); and security guard, a light job (Tr. at 57). He characterized the Sunshine House job as data entry, a sedentary position, or case aide, a light job. (Tr. at 55-56.)

The ALJ then asked a hypothetical question, assuming a person of plaintiff's age, education, and work experience, limited to sedentary work; unable to climb ladders, ropes, or scaffolding; and limited to occasional climbing of ramps and stairs, stooping, crouching, kneeling, and crawling. (Tr. at 57.) The VE testified that aside from data entry clerk, the past work could not be done. (Tr. at 57-58.) The person could do other jobs, including surveillance systems monitor, order clerk, and telephone quote clerk. (Tr. at 58.) If the person needed to change positions between siting and standing at will, without being pulled away from the work station, the data entry clerk job could not be done, but the other jobs could (in reduced numbers). (Tr. at 59.) Finally, the VE indicated that employers would not tolerate, on an ongoing basis, two additional unscheduled breaks or absences exceeding one day per month on an ongoing basis. (Tr. at 60.)

### 4.    ALJ's Decision

On September 11, 2018, the ALJ issued an unfavorable decision. (Tr. at 12.) The ALJ determined at step one that plaintiff had not engaged in SGA since April 19, 2015, the alleged onset date, and at step two that plaintiff suffered from the severe impairments of degenerative disc disease status-post back surgeries and status-post left shoulder repair. (Tr. at 17.)

At step three, the ALJ found that plaintiff's impairments did not meet Listing 1.02, which relates to major joint dysfunction, or Listing 1.04, which relates to disorders of the spine resulting in compromise of a nerve root or the spinal cord. (Tr. at 17-18.) As to the latter, the

11

ALJ explained:

> After reviewing the record, including diagnostic tests, physical examinations, and treatment notes, the undersigned found no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication as required[.] Accordingly, the undersigned finds that the claimant's degenerative disc disease fails to meet or medically equal listing 1.04.

(Tr. at 18.)

Prior to step four, the ALJ found that plaintiff had the RFC to perform sedentary work, with the following additional limitations: he can occasionally stoop, crouch, kneel, crawl, and climb ramps/stairs; he cannot climb ladders, ropes, or scaffolds; and he must be allowed to change positions between standing and sitting at will. In making this finding, the ALJ considered plaintiff's alleged symptoms and the medical opinion evidence. (Tr. at 18.)

Regarding the symptoms, the ALJ acknowledged the two-step test set forth in the regulations, under which he first had to determine whether plaintiff had an underlying impairment that could reasonably be expected to produce the symptoms. Second, once such an impairment had been shown, the ALJ had to evaluate the intensity, persistence, and limiting effects of the symptoms. For this purpose, if the symptoms were not substantiated by objective medical evidence, the ALJ had to consider the other evidence of record to determine if the symptoms limited plaintiff's ability to work. (Tr. at 19.)

Plaintiff alleged disability based on chronic shoulder and back pain, which he said limited his standing, walking, sitting, and lifting abilities. Plaintiff indicated that he could stand for five to ten minutes, walk for about ten minutes, sit for 30 minutes, and lift about five pounds. He also described lower extremity pain/numbness and problems squatting, bending, kneeling, reaching, climbing, and using his hands. According to plaintiff, these symptoms and functional limitations prevented him from engaging in all work-related activity. (Tr. at 19.)

12

The ALJ concluded that while plaintiff's impairments could reasonably be expected to produce the symptoms alleged, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 19.)

The ALJ first noted that the objective medical evidence failed to support the alleged severity and limiting effects of plaintiff's back and shoulder impairments. (Tr. at 19.) The ALJ reviewed the results of plaintiff's various MRI scans and x-rays of the back and shoulder, which contained mild-to-moderate findings, as well as the physical exams, which were generally unremarkable. (Tr. at 19-20.)

The ALJ also discussed the evaluation by Dr. Bernabe, who noted limited lumbar muscle spasms, lumbar tenderness, and limited lumbar range of motion, but full right upper extremity strength, intact sensation, normal reflexes, and normal elbow, wrist, hand, knee, hip, ankle, cervical, and right shoulder range of motion. Dr. Bernabe further found no evidence of extremity clubbing/cyanosis, muscle atrophy, or tenderness in other parts of the body. Plaintiff was able to heel/toe walk, exhibited well-preserved fine/gross manipulation functioning, and walked without an assistive device; straight leg raising test was negative as well. (Tr. at 20.)

The ALJ further noted that at Dr. Butler's exam plaintiff exhibited no back atrophy or shoulder weakness/atrophy, and musculoskeletal exams, including a straight leg raising test, were negative as well. Dr. Butler noted malingering tendencies, indicating that plaintiff did not give his best effort during his examination; he refused to perform certain activities, including toe/heel walking (which was normal during the previous consultative exam), and he refused to squat or stand as well. Dr. Butler stated that plaintiff expressed "more pain and more restriction of movement than . . . what [was] noted on his examination." (Tr. at 20.) She also noted that

13

when plaintiff walked back to his vehicle he threw his cane in the back seat, swivelled himself around to the back, and got into his car without distress or difficulty. She further referenced treatment notes, which she said cleared plaintiff and essentially describe normal examinations. Indeed, Dr. Butler indicated that she could "really find no deficit." (Tr. at 20.) Plaintiff also told Dr. Butler that he could perform activities of daily living. (Tr. at 20.)

The ALJ next noted that other physical exams in the record, while noting lumbar and shoulder tenderness and limited lumbar range of motion, also described normal gait, normal station, normal motor strength, intact sensation, and normal reflexes. Further, several records showed no evidence of left shoulder/extremity atrophy, deformity, or swelling. (Tr. at 20.)

Finally, the ALJ noted that the record described improved symptoms with treatment, including physical therapy, which improved plaintiff's left shoulder range of motion. Plaintiff also exhibited significant improvement in shoulder symptoms with injections. (Tr. at 20.) Other records noted that his pain improved following lumbar laminectomy and discectomy, consistent with plaintiff's testimony in which he described improved lower extremity pain following his last back surgery. (Tr. at 21.)

The ALJ acknowledged that while the evidence did not demonstrate debilitating symptoms, it did support a limitation to sedentary work with additional postural limitations. Because the record indicated increased back pain with prolonged sitting/standing, the ALJ also included a sit/stand option in the RFC. (Tr. at 21.)

As for the opinion evidence, Dr. Bernabe concluded based on his examination that plaintiff could lift/carry ten pounds occasionally and five pounds frequently, consistent with sedentary work. He also said that plaintiff could not push/pull with the left upper extremity and could not perform manipulative activities with the left upper extremity. Finally, he opined that

14

plaintiff could occasionally bend, crouch, stoop, and crawl. The ALJ gave this opinion partial weight, as the record, including diagnostic tests and physical examinations, supported a limitation to sedentary work with postural limitations. However, the record did not support pushing, pulling, and manipulative limitations. The ALJ noted that Dr. Bernabe performed his examination shortly after plaintiff's shoulder surgery, while plaintiff was still recovering and his arm was in a sling. During Dr. Butler's exam the following year plaintiff showed normal and symmetrical grasp strength and normal flexion, extension, and rotation in the left shoulder. Moreover, plaintiff exhibited improved range of motion with treatment, including physical therapy, and physical examinations often showed normal findings. Therefore, the ALJ did not include such limitations in the RFC. (Tr. at 21.)

The ALJ also gave partial weight to the opinion of Dr. Weeks, the initial level agency consultant, who found that plaintiff could perform light work; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; and never climb ladders, ropes, or scaffolds. Dr. Weeks also determined that plaintiff could occasionally reach overhead with the left arm. The ALJ stated that the record, including notations of limited lumbar range of motion and tenderness, supported the postural limitations. However, the evidence, including Dr. Bernabe's report, which unlike Dr. Weeks's opinion was based on a physical exam, supported a limitation to sedentary work. (Tr. at 21.) As with Dr. Bernabe's report, the ALJ declined to accept manipulative/reaching limitations based on plaintiff's shoulder symptoms, which significantly improved following surgery. (Tr. at 21-22.)

The ALJ gave little weight to the agency consultant at the reconsideration level, Dr. Chan, who opined that plaintiff could perform medium level work with occasional overhead reaching limitations. The ALJ found that the record clearly demonstrated symptoms that would

15

prevent plaintiff from lifting up to 50 pounds (as required of medium work) and his symptoms would certainly cause some postural limitations. (Tr. at 22.)

Finally, in one of his treatment records, Dr. Michalski stated that plaintiff was "totally incapacitated at this time." (Tr. at 22.) The ALJ gave this statement little weight for several reasons. First, whether one is capable of working is an issue reserved for the Commissioner. Second, Dr. Michalski provided no detailed explanation or specific functional limitations detailing why plaintiff was incapacitated. Third, while the record supported some functional limitations, physical examinations also described a range of normal findings, including normal gait, normal station, normal motor strength, and generally normal musculoskeletal range of motion, which failed to support a claim of total incapacitation. (Tr. at 22.)

The ALJ concluded:

In sum, while the claimant's impairments certainly cause some functioning difficulties, the overall evidence failed to demonstrate debilitating symptoms. Physical examinations were generally unremarkable overall; diagnostic tests described mostly mild-to-moderate findings; the claimant's impairments improved with treatment; and [he] told the consultative examiner that he was capable of performing daily activities. Such evidence, in combination with consistent/supported medical opinions of record, supports the claimant's residual functional capacity finding and suggests that his impairments are less limiting than alleged.

(Tr. at 22.)

At step four, the ALJ found that plaintiff could not perform any of his past jobs, all of which, according to the VE, exceeded the RFC. (Tr. at 22.) At step five, however, the ALJ found that plaintiff could perform a number of other jobs, as identified by the VE, including surveillance systems monitor, order clerk, and telephone quote clerk. (Tr. at 23.) The ALJ accordingly found plaintiff not disabled and denied the application. (Tr. at 24.)

On June 23, 2019, the Appeals Council denied plaintiff's request for review (Tr. at 1),

16

making the ALJ's decision the final word from the Commissioner on plaintiff's application. See Jozefyk v. Berryhill, 923 F.3d 492, 496 (7th Cir. 2019). This action followed.

## III. DISCUSSION

### A. Pain/Listings

Plaintiff first argues that the ALJ failed to consider the impact of his pain condition on the requirements of the Listings. He notes that after the alleged onset date he underwent three surgeries; that he attempted to return to work at a sheltered workshop but was unable maintain that job due to chronic pain; and that, according to the VE, employers would not tolerate the level of absences he testified to at this job. He further contends that the medical evidence supports his allegation of continued disabling pain, noting his ER visit on June 30, 2017 and his second back surgery in November 2017. (Pl.'s Br. at 6.)

As indicated above, the claimant bears the burden of proving that his impairment satisfies all of the criteria specified in a Listing. Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir. 2006); Maggard, 167 F.3d at 380. As plaintiff notes (Pl.'s Br. at 6-7), certain of the musculoskeletal Listings include pain or other symptoms among their criteria, and it is important to evaluate such symptoms to determine their impact on the claimant's functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(d). However, plaintiff fails to explain how his pain alone satisfies the criteria of any potentially applicable Listing. See, e.g., Startz v. Colvin, No. 12 C 5240, 2014 U.S. Dist. LEXIS 13417, at *28 (N.D. Ill. Feb. 4, 2014) (noting that "pain alone does not medically equal Listing 1.02(A)," which further requires specific objective medical findings and functional limitation); Cates v. Barnhart, No. 1:06-cv-0852, 2007 U.S. Dist. LEXIS 25622, at *19 (S.D. Ind. Mar. 12, 2007) ("Mr. Cates' attempt to equate his pain with an impairment in

17

Listing 1.04 fails without an explanation as to why the pain satisfied the Listing's requirements.").

Plaintiff contends that he underwent repeat back surgery due to L5-S1 disc herniation, causing radiculopathy, and that post-surgery he continued to experience pain and restriction of movement and daily activities, requiring medication and supportive therapies. He contends that his clinically documented back condition, with continuing pain and limitations, meets the criteria of Listing 1.04(A). (Pl.'s Br. at 7.)

Listing 1.04(A) provides:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). As indicated above, the ALJ specifically considered Listing 1.04(A), finding "no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication as required by this listing." (Tr. at 18.)

Plaintiff does not explain how the ALJ erred in making this finding, nor does he cite any specific record evidence showing that he meets the criteria of this Listing.[1] To the contrary, as the ALJ discussed later in his decision, the record contains evidence of negative straight leg

---

[1]Plaintiff does not challenge the ALJ's consideration of his shoulder impairment under the Listings or the ALJ's discussion of Listing 1.02(B). He has accordingly waived any such arguments. See Jeske, 955 F.3d at 597.

18

raising tests (seated and supine), no muscle atrophy, and normal strength, reflexes and sensation. (Tr. at 20, 412, 833, 842.) See Hall v. Berryhill, 906 F.3d 640, 645 (7th Cir. 2018) (holding that claimant failed to meet his burden under Listing 1.04(A) where he had not pointed to any finding by a medical professional that he had motor loss accompanied by sensory or reflex loss). The ALJ also credited the opinion of Dr. Weeks (Tr. at 21), who specifically considered Listings 1.02 and 1.04 (Tr. at 70). See Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004) ("The ALJ may properly rely upon the opinion of [agency] medical experts."). Plaintiff does not challenge Dr. Weeks's report, nor does he cite any medical opinion indicating that he does meet this Listing. See Filus v. Astrue, 694 F.3d 863, 867 (7th Cir. 2012) ("Because no other physician contradicted [the agency consultants'] opinions, the ALJ did not err in accepting them."). The ALJ's discussion of these exam findings and of Dr. Weeks's report came later in his decision, in the RFC section, but I "do not discount it simply because it appears elsewhere in the decision." Curvin, 778 F.3d at 650.

Plaintiff notes that pain alone can be disabling, and that the degree of pain need not be substantiated by objective medical evidence, so long as the claimant demonstrates the existence of a condition that could reasonably be expected to produce the pain alleged. (Pl.'s Br. at 7-8, 14.) Plaintiff then indicates that the record establishes that he suffers from a condition that could be expected to cause pain of the severity he alleges, and that those allegations may not be discredited simply because they are not confirmed by objective evidence or by Dr. Butler's exam. (Pl.'s Br. at 8.)

The ALJ did not hold otherwise. The ALJ found that plaintiff suffered from impairments that could reasonably be expected to cause the symptoms alleged (Tr. at 19) and partially credited plaintiff's statements in finding him limited to a reduced range of sedentary work (Tr.

19

at 21).  <u>See</u> SSR 96-9p, 1996 SSR LEXIS 6, at *1 ("An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare.").  The ALJ rejected plaintiff's claim of debilitating pain based on the entire record, not just the objective medical evidence and/or Dr. Butler's observations.  (<u>See</u> Tr. at 21-22).

Plaintiff contends that the ALJ "cherry picked" statements made by plaintiff, his treating providers, and the agency consultants in reaching his conclusion (Pl.'s Br. at 8), but he fails to develop the argument.  <u>See</u> <u>Hernandez v. Cook County Sheriff's Office</u>, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived[.]"); <u>Webster v. Astrue</u>, 580 F. Supp. 2d 785, 794 (W.D. Wis. 2008) (noting that undeveloped arguments are waived).  In any event, the ALJ's decision shows that he reasonably considered all of the record evidence, ultimately adopting an RFC more restrictive than the reviewing agency consultants proposed and including specific postural limitations and a sit/stand option to account for plaintiff's allegations of back pain.  (Tr. at 21.)

Plaintiff also contends that the ALJ failed to consider the combined effect of all impairments (Pl.'s Br. at 8-9; Pl.'s Rep. Br. at 1-2), but again he does not develop the argument, nor does he explain what additional limitations the ALJ should have included in the RFC.  Plaintiff next notes that an ALJ may not ignore an entire line of evidence contrary to his findings, and may not select for discussion only the medical evidence favoring the denial of benefits, but he fails to identify any specific evidence the ALJ overlooked in his case.  (Pl.'s Br. at 9.)  This argument is also waived.

The ALJ accepted that plaintiff suffered from severe impairments that caused pain and restricted him to a reduced range of sedentary work, reflecting "very serious" limitation.  Plaintiff

fails to demonstrate that the ALJ erred in evaluating his pain, including as it relates to the Listings.

## B.    Plaintiff's Statements

Plaintiff next challenges the ALJ's assessment of his statements regarding the severity of his symptoms. (Pl.'s Br. at 9.)  As the ALJ acknowledged, symptom evaluation is a two step process.  (Tr. at 18-19.)  First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.  SSR 16-3p, 2016 SSR LEXIS 4, at *5.[2]  Second, once such an impairment has been shown, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work.  Id. at *9. If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities, factors that precipitate and aggravate the symptoms, and the treatment he has received for relief of the pain or other symptoms.  Id. at *18-19; 20 C.F.R. § 404.1529(c)(3).  On review, the court affords considerable deference to the ALJ's finding, reversing only if it is "patently wrong."  Ray v. Berryhill, 915 F.3d 486, 490 (7th Cir. 2019).

As indicated above, in the present case the ALJ summarized plaintiff's contentions, then found that while plaintiff's impairments could reasonably be expected to produce the symptoms

---

[2]SSR 16-3p replaced SSR 96-7p, the Ruling plaintiff cites.  (Pl.'s Br. at 10.)  The new Ruling eliminates use of the term "credibility" and clarifies that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2016 SSR LEXIS 4, at *1. However, both Rulings use the same two-step test and direct consideration of the same factors.  See McCarthy v. Berryhill, No. 17-C-0276, 2018 U.S. Dist. LEXIS 240171, at *27 n.17 (E.D. Wis. Jan. 19, 2018).

21

alleged, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 19.) In support of this finding, the ALJ noted that the objective medical evidence failed to support the alleged severity and limiting effects of the symptoms; that the physical examinations were generally unremarkable; that Dr. Butler noted malingering tendencies during her exam; that plaintiff told Dr. Butler that he could perform activities of daily living; and that plaintiff's symptoms improved with treatment. (Tr. at 19-22.)

The ALJ did not disregard plaintiff's subjective complaints based solely on the lack of objective medical support, as plaintiff seems to suggest.[3] (See Pl.'s Br. at 10.) While the ALJ considered the objective evidence, as he was required to do, see SSR 16-3p, 2016 SSR LEXIS 4, at *11 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms"), he also considered plaintiff's activities, response to treatment, and the evidence of malingering. The ALJ gave specific reasons for his finding, consistent with the regulatory factors, and supported by substantial evidence in the record. See, e.g., Myles v. Astrue, 582 F.3d 672, 676 (7th Cir. 2009). As with the Listing argument discussed above, plaintiff never really engages with the ALJ's actual analysis.

Plaintiff notes that an ALJ should not make his own independent medical determinations or substitute his lay opinion for that of medical expert (Pl.'s Br. at 11), but he fails to explain how the ALJ violated this rule in his case. The ALJ considered the entire record here, including the objective medical evidence, the medical opinions, and plaintiff's testimony, specifically explaining how the opinion evidence factored into the RFC. The rule against "playing doctor"

_____

[3]Indeed, the ALJ partially credited plaintiff's allegations in determining RFC.

22

does not mean the ALJ must rely entirely on a doctors' reports. See Thomas v. Colvin, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide."); Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians.").

Finally, plaintiff notes that an ALJ has a duty to develop a full and fair record, which may in some cases require consultation with a medical advisor. (Pl.'s Br. at 5, 11.) Once again, plaintiff fails to develop an argument that the ALJ violated this requirement in his case.[4] The ALJ is required to solicit further medical opinion "only when the evidence received is inadequate to determine whether the claimant is disabled." Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). The record in this case contains reports from two consultative examiners, as well as the reports of two reviewing medical experts. Plaintiff fails to explain why the ALJ was required to consult with another expert in his case. See Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993) (noting that judicial review of administrative decisions is deferential, a decision supported by substantial evidence must be enforced, and district judges must respect the authority of administrative officials to decide how much evidence is enough).

Importantly, plaintiff was represented by counsel at the administrative level, and he made no such request to the ALJ. As the Seventh Circuit has explained, "although ALJs bear some responsibility for developing the administrative record, they are also free to assume that

_____

[4]Plaintiff makes no argument that the ALJ failed to collect all of the medical records. At various points in his brief, plaintiff discusses the rules for determining the onset date (Pl.'s Br. at 3-4, at 16), but he also develops no argument that the ALJ erred in this regard. These arguments are accordingly waived.

a claimant represented by counsel has presented [his] strongest case for benefits." Buckhanon ex rel. J.H. v. Astrue, 368 Fed. Appx. 674, 679 (7th Cir. 2010). Where the claimant does not ask the ALJ to obtain medical assistance, "the appropriate inference is that [he] decided that another expert opinion would not help [him]." Id.; see also Poyck v. Astrue, 414 Fed. Appx. 859, 861 (7th Cir. 2011) ("Particularly in counseled cases, the burden is on the claimant to introduce some objective evidence that further development of the record is required.").

## C.    Listing 1.04/Medical Opinions

As his final argument, plaintiff contends that his multiple surgeries resulted in a listing-level impairment under section 1.04(A). (Pl.'s Br. at 11.) He quotes from the Listing, but he again makes no effort to demonstrate that he satisfies its specific criteria. (Pl.'s Br. at 12.)

Plaintiff contends that the opinions of his treating doctors should have been given greater weight in establishing the extent of his pain condition to support the requirements of Listing 1.04(A). (Pl.'s Br. at 12.) However, the record contains no treating source opinion on the Listings. As indicated above, Dr. Michalski found plaintiff "totally incapacitated" from 8/30/17 to 9/12/17 (Tr. at 849), but he offered no opinion on the severity of plaintiff's pain or any other symptom or function relevant to Listing 1.04(A).[5]

The ALJ nevertheless considered Dr. Michalski's report, assigning it little weight. The ALJ noted that the report opined on an issue reserved to the Commissioner; that Dr. Michalski provided no explanation or specific functional limitations detailing why plaintiff was incapacitated; and that the physical examination findings of record failed to support a claim of

_____

[5]In this section of his brief, plaintiff reiterates his argument that since the onset date he underwent several surgeries, could not maintain employment at a sheltered workshop, and continued to experience extreme pain. (Pl.'s Br. at 12-13.) For the reasons stated above, plaintiff fails to demonstrate that this evidence satisfies Listing 1.04.

24

total incapacitation.  (Tr. at 22.)

Under the regulation applicable to plaintiff's claim, a treating physician's opinion is entitled to "controlling weight" if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence.  20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017.").  If the opinion does not meet the test for controlling weight, the ALJ must decide how much weight it does deserve, considering the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion.  Campbell v. Astrue, 627 F.3d 299, 306 (7th Cir. 2010). Generally, more weight is given to medical opinions from treating sources, as they are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments.  20 C.F.R. § 404.1527(c)(2).

However, this does not mean that a treating physician's opinion is the final word on a claimant's disability.  Schmidt, 496 F.3d at 842.  The ALJ may discount a treating physician's medical opinion that lacks a supporting explanation or conflicts with the better reasoned opinion of a consulting physician, see, e.g., Cooley v. Berryhill, 738 Fed. Appx. 877, 881 (7th Cir. 2018); Loveless v. Colvin, 810 F.3d 502, 507 (7th Cir. 2016); Ketelboeter v. Astrue, 550 F.3d 620, 625 (7th Cir. 2008), so long as he minimally articulates his rationale, see Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008).  The regulation further provides that an ALJ need not give any special significance to a medical source statement that the claimant is "disabled" or "unable to work," as this is an issue reserved to the Commissioner.  20 C.F.R. § 404.1527(d).

Plaintiff concedes that the ultimate issue of disability is for the Commissioner to decide but argues that Dr. Michalski's opinion must be considered in the context of the ongoing

25

medical treatment he was receiving, including the medications he was prescribed in June 2017 and the examinations he would subsequently receive.[6]  (Pl.'s Br. at 13.)  However, plaintiff again fails to develop his argument that the ALJ overlooked important evidence, and he makes no attempt to demonstrate that the reasons the ALJ gave for discounting Dr. Michalski's opinion were erroneous or unsupported.[7]  See Stepp v. Colvin, 795 F.3d 711, 718 (7th Cir. 2015) ("We uphold all but the most patently erroneous reasons for discounting a treating physician's assessment.") (internal quote marks omitted).

Plaintiff notes that the opinions of treating sources are generally given more weight than those of one-time consultants, and in this case the ALJ gave more weight to Dr. Butler's opinion that Dr. Michalski's.  (Pl.'s Br. at 13-14.)  However, "a claimant is not entitled to disability benefits simply because [his] physician states that [he] is 'disabled' or unable to work. The Commissioner, not a doctor selected by a patient to treat [him], decides whether a claimant is disabled." Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001) (internal citation omitted).

---

[6]In considering the context, it is worth noting that Dr. Michalski rendered no opinion that plaintiff was permanently disabled.  Rather, the report upon which plaintiff relies simply excused him from work from 8/30/17 to 9/12/17.  (Tr. at 849; see also Tr. at 850.)

[7]In reply, plaintiff notes that Dr. Michalski had the benefit of plaintiff's entire medical history in reaching his conclusion.  (Pl.'s Rep. Br. at 2.)  However, plaintiff fails to explain how the medical evidence fills in the gaps in the doctor's report.  Citing Barnett v. Barnhart, 381 F.3d 664, 669 (7th Cir. 2004), plaintiff further argues in reply that the ALJ should have contacted Dr. Michalski for clarification.  (Pl.'s Rep. Br. at 2-3.)  However, Barnett relied on a regulation that was eliminated before the hearing in this case.  See McFadden v. Berryhill, 721 Fed. Appx. 501, 506 (7th Cir. 2018).  In any event, the ALJ did not discount Dr. Michalski's statement just because it touched on an ultimate issue or lacked an explanation; he also found it inconsistent with the other evidence of record.  See Martha L.S. v. Comm'r of Soc. Sec., No. 19-cv-253, 2019 U.S. Dist. LEXIS 191906, at *19 (S.D. Ill. Nov. 5, 2019) (finding no duty to re-contact where the problem was not just that the treaters failed to identify the evidence they relied on, but that their opinions were inconsistent with the evidence).  Finally, despite being represented by counsel at the hearing, plaintiff made no request that the ALJ re-contact Dr. Michalski or obtain another medical opinion.

26

The ALJ is permitted to credit the opinion of a consultant over that of a treating source so long as he adequately explains his reasoning. See Schmidt, 496 F.3d at 842. Here, the ALJ noted that the consultants performed physical examinations and set forth detailed findings regarding plaintiff's functioning, findings consistent with the other evidence of record. (Tr. at 20.) Dr. Michalski, on the other hand, provided no explanation for his conclusion. See 20 C.F.R. § 404.1527(c) (noting that the ALJ will consider the explanation provided by the source for the opinion and the consistency of the opinion with the record as a whole).

Plaintiff contends that Dr. Butler's examination was cursory, but he cites no record evidence in support of that allegation. He also posits that his refusal to perform per some of her instructions, which she construed as malingering, could be interpreted as guarding. (Pl.'s Br. at 13.) Again, he cites no record evidence in support of that argument. Moreover, as the ALJ noted, plaintiff was able at Dr. Bernabe's exam to complete activities he refused to perform for Dr. Butler. (Tr. at 20.) As the ALJ also noted, Dr. Butler based her finding of malingering not just on plaintiff's effort during the exam but also on her observations of him after he left the exam room and walked back to his car. (Tr. at 20.) Plaintiff's speculation that Dr. Butler was biased or mistaken is insufficient to demonstrate that the ALJ erred in relying on her findings. See Elder v. Berryhill, 774 Fed. Appx. 980, 983 (7th Cir. 2019).

In sum, plaintiff fails to show that the ALJ erred in his consideration of the opinion evidence. Because plaintiff fails to demonstrate reversible error of any kind, I need not address his argument for an award of benefits. (Pl.'s Br. at 15-16.)

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is affirmed, and this case is dismissed.  The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of September, 2020.

s/ Lynn Adelman
LYNN ADELMAN
District Judge
